IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KEYON PAYLOR,                          )
                                       )
                Plaintiff,             )     Case: 1:26-mc-00087
                                       )     Assigned To : Cobb, Jia M.
                                       )     Assign. Date : 6/2/2026
v.                                     )     Description: Misc.
                                       )
BALTIMORE POLICE DEPARTMENT, et        )
al.,                                   )
                                       )
                Defendants.            )

## PLAINTIFF'S MOTION FOR AN ORDER COMPELLING THIRD-PARTY MICHAEL BROMWICH TO COMPLY WITH NARROWED SUBPOENA

Plaintiff, Keyon Paylor, by and though his undersigned attorneys, respectfully moves this Court for an order compelling third-party Michael Bromwich to comply with Plaintiff's narrowed subpoena for relevant documents about Plaintiff and the named individual Defendants Daniel Hersl, John Burns, Timothy Romeo, and John Moore in his civil rights lawsuit. In support of this motion, Plaintiff states as follows:

### INTRODUCTION

In 2014, Baltimore Police Officers Daniel Hersl, John Burns, Timothy Romeo, and Jordan Moore caused Plaintiff to be wrongfully arrested, prosecuted, and convicted for unlawfully possessed a firearm and ammunition—crimes he did not commit. As a result, Plaintiff spent multiple years imprisoned as an innocent man. Plaintiff contemporaneously asserted his innocence, and a few years later, evidence supporting his claims came to light. In 2017, Hersl was convicted along with other Baltimore Police Department ("BPD") Gun Trace Task Force ("GTTF") officers for engaging in the substantially the same conduct that Plaintiff alleges caused

**RECEIVED**

JUN 0 2 2026

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

his wrongful conviction. Hersl's and the GTTF officers' prosecution and convictions not only exposed their wrongdoings, but indicated the corruption extended past the GTTF.

In the wake of the GTTF scandal, BPD hired law firm Steptoe & Johnson, led by Michael Bromwich, to conduct an independent, neutral, historical examination of the GTTF scandal to identify the causes of the corruption. The investigation was comprehensive and involved interviewing many BPD employees, including Defendant Burns. Bromwich also obtained documents related to BPD officer misconduct. Using these documents and interviews, Bromwich published a report that painstakingly detailed the widespread malfeasance within the Department and clearly showed that the misconduct was well-known, pre-dated Plaintiff's wrongful arrest, and followed a similar pattern to the conduct Plaintiff claims occurred in his own case.

As part of Plaintiff's discovery efforts, Plaintiff subpoenaed Bromwich seeking documents, memoranda, and recordings relating to Plaintiff and the individual Defendants. Bromwich refuses to comply with Plaintiff's narrowed subpoena request on two grounds: (1) that memoranda memorializing witness interviews are work product and thus, are not subject to disclosure; and (2) that it is unduly burdensome to search for and produce responsive documents. Both arguments fail.

As to the interview memoranda, Plaintiff is entitled to these documents for several reasons. First, Plaintiff contends that the work product doctrine does not apply because the memoranda were not created in anticipation of litigation. Second, any work product protection that may have existed was waived because Bromwich disclosed the contents of these documents in his report and did not expect the contents of the memoranda to be kept confidential. And third, to the extent that the Court finds that memoranda are work product, Plaintiff can demonstrate substantial need for the memoranda.

2

As to Bromwich's claim of undue burden, the Court must reject this argument because Bromwich cannot show that the Plaintiff's narrowed request for documents—documents that go the heart of his claims—is unreasonable and justifies nonproduction.

Plaintiff's motion to compel should be granted.

## RELEVANT FACTUAL BACKGROUND

### *Plaintiff's Wrongful Conviction*

In 2017, the public learned what, presumably, BPD had long known: there was extensive and deep corruption within its ranks. For this was the year that multiple BPD officers who were assigned to the GTTF were federally charged with racketeering, robbery, extorsion and overtime fraud. *See* "Gun Trace Task Force Investigation", https://www.gttfinvestigation.org/.

Plaintiff, however, was among those who were not shocked by some of the charges. Indeed, in 2014, Plaintiff was framed by BPD officers Daniel Hersl, John Burns, Timothy Romeo, and Jordan Moore (hereinafter referred to as "Officer Defendants"), for unlawful possession of a weapon and ammunition—crimes he did not commit. *See* Ex. A (Paylor Complaint) at ¶¶ 15-33. Shortly after his wrongful arrest, Plaintiff proclaimed his innocence on jail calls with family members and discovered that in addition to framing him, Officer Defendants had also stolen from him. *Id.* at ¶¶ 28-30. Plaintiff knew the Officer Defendants were lying and the evidence implicating him was fabricated, but Plaintiff also reasonably believed that in a he said-he said contest, a jury would believe the cops over his word. *Id.* at ¶ 31. As a result, Plaintiff pled guilty to the charges and was sentenced to five years in prison. *Id.* at ¶ 32-33.

### *Officer Defendant Hersl is Federally Indicted and Convicted for Corrupt Practices*

Unbeknownst to Plaintiff, at the same time he was being wrongfully prosecuted, the federal government was investigating Officer Defendant Hersl and a group of his fellow

3

officers—all of whom were members of the GTTF. *Id.* at ¶ 34. Federal prosecutors listened to Plaintiff's jail calls about his wrongful arrest and, believing Plaintiff to be credible, presented Plaintiff before the grand jury. *Id.* at ¶¶ 34-36. There, Plaintiff testified about his arrest and explained why he pled guilty to a crime he had not committed. *Id.* at ¶ 36. The grand jury voted to indict Hersl. *Id.* at ¶ 39. About a year later, Hersl was convicted by a jury of RICO conspiracy and Hobbs Act Robbery. *Id.* at ¶ 41. To reach this verdict, the jury relied on the government's evidence showing that Hersl and other BPD officers had a practice of stealing money, property and drugs by unlawfully detaining people and/arresting victims, and authoring false documents to cover up their misconduct. *Id.* at ¶ 40. The government also presented evidence that this misconduct was widespread in BPD's ranks and pre-dated Plaintiff's wrongful 2014 arrest. *Id.* at ¶ 42-44.

### *Michael Bromwich Independently Investigates the Scope and Root of the GTTF's Corruption*

Prior to Hersl's conviction, the U.S. Department of Justice found that there was "reasonable cause to believe" that BPD engaged in unconstitutional practices in four specific areas: (1) making unconstitutional stops, searches, and arrests; (2) using enforcement strategies that produce severe and unjustified disparities in the rates of stops, searches, and arrest of African-Americans; (3) using excessive force; and (4) retaliating against people engaging in constitutionally-protected expressions in violation of the First Amendment. *See* Ex. B (Consent Decree) at 2-3. In response to DOJ's findings, the City of Baltimore and BPD entered a consent decree that outlined steps BPD and the City would take to institute reforms to ensure that BPD policing was constitutionally executed. *Id.*

In October 2019, at Judge Bredar's suggestion, BPD and the City hired Steptoe & Johnson, led by Michael Bromwich, (referred collectively as "Bromwich") to conduct an independent, factual investigation to "how and why the GTTF was able to happen." Ex. C (BPD Commissioner's Letter to Bromwich, Jan. 14, 2022) at 1; Ex. D (Transcript Hearing on Bromwich Investigation ("Hrg. Tr."), Jan. 20, 2022) at 6:10-20. Although, the GTTF scandal did not involve allegations stemming from the four areas of unconstitutional practices DOJ identified, Judge Bredar believed a historical examination of the GTTF scandal could help identify areas of reform related to helping BPD "make progress on the integrity front." Ex. D at 7:9-13. The investigation was a postmortem of the GTTF scandal, a public airing of BPD's failings, and a bridge to rebuilding public trust. *See* Ex C at 1 ("We recognized that neither the BPD nor the Baltimore community could be comfortable that the full scope of the problem had been identified, rooted out, eliminated, and its resurgence prevented without a capable, comprehensive, independent investigation into how and why the GTTF was able to happen.").

In January 2022, Bromwich released a 515-page report on the GTTF "scandal". *See* Ex. E (Steptoe Press Release). As promised, the investigation was thorough and relied on information Bromwich received through interviews and documents. *See* Ex. F (GTTF Report) at 12-16. Some of those interviews and documents related specifically to Hersl and Burns. *See e.g. id.* at 332 (section on Hersl), E7 (references an interview with Burns). As noted in Bromwich's published report, "[t]o protect the independence and objectivity of [the] investigation" Bromwich did not permit BPD counsel to attend the interviews. *Id* at 14. Additionally, witnesses were advised that the interviews were considered on the record and could expected to be publicly quoted. *Id.* at 15. BPD had no involvement in the decision about what would be produced in the report. Ex. E at 3.

***Plaintiff's Subpoena and Attempts to Resolve the Dispute***

After Plaintiff's wrongful conviction was vacated, Plaintiff filed his civil rights lawsuit

thereafter, naming John Burns, Daniel Hersl, Timothy Romeo, and Jordan Moore as individual

defendants and BPD. *See generally* Ex. A. Plaintiff has alleged that he was not Officer

Defendants' only victim, but instead they had participated in similar misconduct around the time

of Plaintiff's wrongful arrest and prosecution. *See* Ex. A at ¶¶ 42-43; *see also* Fed. R. Evid.

404(b).

As part of his discovery efforts, Plaintiff served a subpoena on Bromwich seeking

documents, memoranda, and recordings relating to the GTTF investigation and the criminal

prosecutions of certain GTTF officers. *See* Ex. G (Bromwich Subpoena) at 6-7. In the process of

conferring with Bromwich's counsel, Plaintiff narrowed his request to "[d]ocuments,

memoranda, and recordings relating to Plaintiff, and Defendant Hersl, Burns, Romeo, and

Moore."[1] *See* Ex. H (Emails) at 3 (Email between Filler and Benitez, Nov. 4, 2025). In response,

Bromwich counsel objected stating that the memoranda memorializing interviews were protected

by the attorney-work product doctrine and objected to searching for and producing other

responsive documents as unduly burdensome. *See* Ex. H at 2 (Email between Filler and Benitez,

Nov. 10, 2025). Plaintiff disputed the assertion of the work product doctrine, but in an effort to

reach a compromise, Plaintiff offered to accept interview memoranda that redacted information

the revealed mental impressions, conclusions, opinions, or legal theories. *See* Ex. H at 1-2 (Email

between Filler and Benitez, Dec. 5, 2025). Bromwich's counsel rejected this offer of compromise

---

[1] Plaintiff limited his subpoena request in light of the district court's ruling to bifurcate and stay *Monell* discovery on Plaintiff's claim against the Baltimore Police Department. *See Paylor v. Baltimore Police Department, et al.*, No. 24-cv-02746 (D.Md.) at Doc. 59.

and maintained the work-product objection. *See* Ex. H at 1 (Email between Filler and Benitez, Dec. 10, 2025). The parties have reached impasse.

## LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs the enforcement of third-party subpoenas. *In re Info. Tech. Mgmt. Servs. Inc.*, No. 24-MC-152-ABJ-MJS, 2025 WL 27156, at *3 (D.D.C. Jan. 3, 2025); Fed. R. Civ. P. 45. Where a subpoenaed party fails to comply with a subpoena, the serving party can move to compel compliance in the district where compliance is required. Fed. R. Civ. P. 45(g).

Federal Rule of Civil Procedure ("Rule") 26(b)(1) permits a party to obtain discovery regarding any non-privileged matter that is relevant to the claim and defenses raised in the case. Fed. R. Civ. P. 26(b)(1). Rule 26's broad scope applies to relevant material possessed by third parties and can be obtained through Rule 45's subpoena power. *See Goldstein v. F.D.I.C.*, 494 B.R. 82, 85 (D.D.C. 2013); *In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013) ("Discovery obtained from a nonparty pursuant to Rule 45 has the same scope as provided in Rule 26(b), thus promoting uniformity.") (internal quotation mark omitted). The subpoenaed third party may object to the production of responsive documents if the requested documents are privileged or constitute other "protected matter", or if compliance with the subpoena would subject the third party to undue burden." *Goldstein*, 494 B.R. 82 at 85-86 (citing *In re Subpoena Goldberg*, 693 F.Supp.2d. 81, 83 (D.D.C.2010)). However, it is the objecting party's burden to show that requested documents should not be produced. *See In re Denture Cream Prods.*, 292 F.R.D. at 123.

7

# ARGUMENT

## I.    The Work Product Doctrine Does Not Protect Bromwich's Interview Memoranda From Disclosure.

### a.    *The Work Product Doctrine Does Not Apply Because the Interview Memoranda Were Not Created in Anticipation of Litigation.*

The attorney work-product doctrine is a protection a nonparty can claim to justify the nonproduction of responsive documents. *See United States v. Nobles*, 422 U.S. 225, 238 (1975) (acknowledging that the work-product doctrine can be asserted in civil cases). The work-product doctrine applies to "written materials that lawyers prepare in anticipation of litigation." *United States v. Williams Companies, Inc.*, 562 F.3d 387, 393 (D.C. Cir. 2009) (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C.Cir. 1998). The purpose of the doctrine is to permit an attorney to "prepare for litigation without fear that opponents may obtain their private notes, memoranda, correspondence, or other written material." *Id.*

Determinations about whether a document was created or obtained in anticipation of litigation is a fact specific inquiry. *See Jud. Watch, Inc*, 926 F. Supp. 2d at 137 ("[W]hether, in light of the nature of the document or the factual situation in a particular case, the document can be fairly be said to have been prepared or obtained because of the prospect of litigation."). The concept of "in anticipation of litigation" requires a two-fold analysis of the temporal and motivational drivers for the attorney's conduct. *See Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 189 (D.D.C. 1998). As to timing, the court looks to see if the document was prepared before or during litigation. *Id.* (citation omitted). As to the motivation, the court scrutinizes the reasons for the attorney's conduct: in particular, the court evaluates whether the document was prepared or obtained because of the prospect of litigation; and whether the documents were prepared for the purpose of assisting an attorney in preparing for litigation and not for some other

reason. *See id.*; *Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 137-138 (D.D.C. 2013). The temporal question is not dispositive. *Athridge*, 184 F.R.D. at 189. Instead, motive is determinative. *Id.* ("It is the [motivational] concept that it determinative for the work-product protection. Thus, materials may be prepared before or when litigation is imminent or pending without necessarily having been prepared in anticipation of litigation from a motivational point of view.") (citation omitted).

Because the motivation prong is determinative, Plaintiff addresses it first. There are multiple indicators that demonstrate that Bromwich's work was not motivated in anticipation of litigation.

First, Bromwich and BPD did not have an attorney-client relationship that was formed in anticipation of litigation. Specifically, Bromwich was not working to vindicate BPD's litigation interest—the partisan work required for the work-product protection to apply. *See Nobles*, 422 U.S. at 238 (noting that "[a]t its core" the doctrine provides shelter so that an attorney can analyze and prepare the client's case). During the conferral, Bromwich's counsel stated that Bromwich did not represent BPD during Bromwich's investigation. This admission is supported by BPD's and Bromwich's conduct during the investigation and after the report was published. For example, rather than work in tandem, Bromwich and his team worked independently from BPD. *See* Ex. E ("The investigation was conducted with complete independence and without any interference from city officials."). This independence meant that BPD was not involved in decisions about which details would be disclosed in Bromwich's report. *See id.* ("Former Chief Solicitor Andre Davis and Commissioner Michael S. Harrison promised at the outset that we would have full and complete independence in...producing our report. They were true to their word...."). This separation prevented BPD from directing Bromwich to withhold details that

9

would turn out to be harmful to BPD's interests. Indeed, Bromwich stated this separation was necessary to "protect the independence and objectivity of the investigation." Ex. F at 14. In other words, Bromwich was not engaged in a partisan mission or conducting his work in the role of an BPD's advocate, but rather a neutral fact-finder.

Additionally, inconsistent with a litigation-focused attorney-client relationship, BPD and Bromwich communicated about Bromwich's report and findings publicly. After Bromwich published his findings and recommendations for reform, BPD publicly responded to the recommendations to provide its positions. *See* Ex. C at 2-13 (identifying which recommendations it agreed with or felt could not be fully implemented). In the absence of a litigation-focused attorney-client relationship, Bromwich cannot claim that he was motivated to obtain and prepare the documents in anticipation of litigation against BPD.

Second, Bromwich's report was harmful to BPD's interest. The consent decree was based on specific DOJ findings and Bromwich's investigation was not directly responsive to the issues raised in the decree. Ex. E at 2-3; *cf* Ex. B at 3-4 (identifying different and distinct bases for the consent decree). Bromwich was given a broader and tangential mandate: to investigate how and why the GTTF scandal was able to happen. Ex. C at 1. The result was a comprehensive airing of BPD's multi-decade institutional failing that identified widespread and deeply embedded corruption throughout BPD's ranks, This corruption led to BPD officers committing crimes and violating citizen's rights. *See* Ex. F at i-xxvii (summarizing the report's findings of BPD's many institutional failings over the past 20 years); Ex. E at 1-2. Indeed, Bromwich's report exposed previously hidden misconduct that in many respects exceeded DOJ's findings that BPD operated a department that violated citizen's constitutional rights. By so doing, Bromwich's work was a tool for BPD's adversaries in that it created fertile ground for new litigation. Such disclosure

directly undermines any argument that Bromwich's work was conducted in anticipation of litigation on BPD's behalf.

Third, Bromwich's work was not conducted in an adversarial context—a context that provides the requisite grounding for the work product doctrine to attach. *See Gen. Elec. Co. v. Johnson*, No. CIV.A.00-2855(JDB), 2006 WL 2616187, at *11 (D.D.C. Sept. 12, 2006) ([T]he purpose of the doctrine is to protect the integrity of the *adversarial* process") (emphasis added); *Williams Companies, Inc.*, 562 F.3d at 394 (noting that the doctrine is "designed to promote the *adversary* system by safeguarding the fruits of an attorney's trial preparation from the discovery attempts of the opponent.") (emphasis added) (citation omitted); *Rockwell Int'l Corp. v. U.S. Dep't of Just.*, 235 F.3d 598, 604 (D.C. Cir. 2001) ("The purpose of the privilege, however, is not to protect any interest of the attorney, but to protect the *adversary* trial process itself. It is believed that the integrity of the system would suffer if *adversaries* were entitled to probe each other's thoughts and plans concerning the case.") (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C.Cir. 1980) (emphasis added).

Bromwich was engaged after the consent decree had been entered. Bromwich's investigation represented a collaborative effort to help gather information to achieve the shared reform goal. Consistent with this partnered approach, Bromwich received "substantial cooperation and assistance" from BPD's own adversary during the consent decree litigation—the DOJ—as well from the consent decree monitoring team, and potential future adversary, the United States Attorney's Office for the District of Maryland ("USAO"). Ex. E at 3. Bromwich also shared a draft of his report with DOJ and the USAO. *see* Ex. F at 15, n. 14 (permitting DOJ and the USAO, *inter alia*, to collaborate in the editing of the report). Drafts of reports are the quintessential type of documents that are almost always withheld in anticipation of litigation. But

11

here, through Bromwich's collaborative process, BPD's former and future adversaries were given insight into Bromwich's areas of investigation, his project aims, and were permitted to weigh in on his final product. This type of collaboration and transparency is antithetical to work conducted in adversarial context for the purpose of preparing for litigation.

It is clear that motivation for Bromwich's work was not in anticipation of litigation but to create a report for the primary purpose of allowing BPD to rebuild public trust. Ex. C at 1. In many ways Bromwich's work was akin to an audit. Bromwich's work and resulting report was designed to be a neutral and objective fact-based analysis of the GTTF scandal. As Judge Bredar remarked, the investigation was a historical lookback to help BPD move with integrity in the future. Ex. D at 6:10-7:13; 16:13-15 ("Baltimore needs to learn and know its history. That's why the Bromwich report remains timely and should be taken on board by all."); 16:23-17:3 ("There's still a long road ahead, but the Court's convinced that the Department is now headed in the right direction, the Department's navigation on its continuing journey will now be aided by Mr. Bromwich's look back to recent history which only confirms that we cannot go back."). There were no legal questions to answer, no legal theories to grapple with, and no legal advice for Bromwich to give. Although Bromwich also provided recommendations for reform, BPD was not bound by the consent decree to adopt them nor did BPD face liability if is rejected Bromwich's recommendations—as could be the consequence if the project was undertaken for the purpose of litigation. Bromwich's work simply added material and recommendations for BPD to consider, much in the same way a routine audit may include recommendations for change. Bromwich's remove from litigation explains why Bromwich did not have a litigation-focused attorney-client relationship with BPD, why Bromwich was free to act and disclose

12

information without input from BPD, and why Bromwich was able to collaborate with BPD's adversaries.

As to the temporal element, Plaintiff does not dispute that Bromwich was engaged while the consent decree was active. Bromwich was hired after the consent decree between BPD and DOJ had been entered and while quarterly reviews were being conducted. *See* Ex. D at 4:23-5:9. But just because the consent decree was active does not mean that Bromwich's role in this context was litigation focused. *See Athridge*, 184 F.R.D. 181 at 189 ("[M]aterials may be prepared before or when litigation is imminent or pending without necessarily having been prepared "in anticipation" of ligation for a motivational point of view."). The temporal element is not informative to the Court's analysis due to Bromwich's unique mandate.

Given this context, it cannot be said that Bromwich's creation of the interview memoranda was motivated by the anticipation of litigation. As such, the work product doctrine is not implicated here and should not be applied to shield the interview memoranda from disclosure. *See In re Sealed Case*, 146 F.3d at 887 (noting that "not all work undertaken by lawyers find protection in the work-product privilege," including documents prepared by lawyers for nonlitigation purposes); *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 274 (D.D.C. 2013) ("As a general matter, the work-product doctrine will not be recognized when doing so is not required to maintain a healthy adversary system.").

### b. The Work Product Doctrine Does Not Apply Because the Interview Memoranda Were Created with an Eye Towards Disclosure.

Bromwich's work product assertion fails for a second reason. In addition to the fact that the interview memoranda were not created in anticipation of litigation, Bromwich did not reasonably expect that the interview memoranda would be kept confidential. As such, the interview memoranda are not protected by the work product doctrine and should be produced.

13

The fundamental purpose of the work product doctrine is to provide a measure of assurance that an attorney's preparation for litigation will be kept secret from adversaries. *See Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947) (The work product doctrine serves to protect against the unfair and unwarranted intrusion into an attorney's preparation for litigation); *Gen. Elec. Co. v.* 2006 WL 2616187, at *10. (noting that the doctrine creates a "zone of privacy"). This secrecy prevents adversaries from gaining insight into an attorney's theories and mental impressions through the disclosure of information gleaned through interviews and other types of investigations. However, the doctrine is waived when an attorney voluntarily pulls back the curtain and discloses information in a manner that is inconsistent with the maintenance of secrecy from the disclosing party's adversary. *See United States v. Deloitte LLP*, 610 F.3d 129, 141-42 (D.C. Cir. 2010). Similarly, no work product protection exists where the attorney did not have a reasonable expectation that the gathered documents and information would be kept confidential. *Id.*

When Bromwich conducted his interviews, he advised the witnesses that the interviews would be on the record and that witnesses could expect to be quoted in the report or have their views attributed to them by name. Ex. F at 15. Although there was an offer for interviewees to identify portions of their interviews as confidential or off the record, very few witnesses did so. *Id.* Thus, with minimal exception, Bromwich knew and intended to specifically disclose the information provided by interviewees. Indeed, Bromwich's report is replete with quotes and contextual information that provide the reader with insight about what questions the interviewee was asked and why. *See e.g. id.* at A5, n. 12; 135; 204, n. 49; 341; 342; 358; 385 (quotes from and attributions to Burns that make clear which events Bromwich was investigating, which individuals were the focus of his investigation, and what questions Burns was asked). The lack of

14

expectation of confidentiality in addition to the intentional disclosure of the subject matter covered in the interview and the use of quotes from the interviews waives any work product protection. *See Fresh Air for the Eastside, Inc. v. Waste Mgmt. of New York, LLC*, No. 18-CV-6588-MAV-MJP, 2025 WL 2107878 (W.D.N.Y. July 28, 2025) (finding the plaintiff waived work product protection by quoting a consulting expert's communication in the second amended complaint); *Vardon Golf Co. v. Karsten Mfg. Corp.*, 213 F.R.D. 528, 534 (N.D. Ill. 2003) (waiver found for documents that were quoted in publicly filed petition).

Bromwich's disclosure of interviewee quotations and the accompanying revelations about what was explored in the interviews in his public report are inconsistent with the maintenance of secrecy and thus, Bromwich should not now be able to claim that the interview memoranda should be shielded from disclosure.

### c. If the Interview Memoranda Are Work Product, the Memoranda Should Still Be Disclosed Because Plaintiff has Substantial Need for the Interview Memoranda.

To the extent that the Court finds that the interview memoranda are covered by the work-product doctrine, the Court's analysis does not end there. Even when the work product protection applies, the privilege is not absolute. Courts have adopted a "two-tiered structure" to determine when certain types of work product can be disclosed. *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 10 (D.D.C. 2008). In the case of opinion work product—documents reflecting a party's attorney or other representative's mental impressions, opinions, judgements, or legal theories—the moving party must show "extraordinary justification." *Id.* (citing *In re Sealed Case*, 676 F.2d 793, 811 (D.C.Cir, 1982). Fact work product—non-privileged facts— must be produced if the seeking party shows a substantial need for the material in preparation for the party's case, and the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *See In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 4 (D.D.C. 2002). When a

document contains both opinion and fact work product, the court must evaluate whether the factual information can be disclosed without revealing the attorney's opinions. *F.T.C. v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 152 (D.C. Cir. 2015).

i. The Interview Memoranda Likely Primarily, or Wholly, Contain Fact Work Product.

During the conferral process Bromwich made no attempt to distinguish between fact and opinion work product. Ex. H at 2 (Email between Filler and Benitez, Nov. 10, 2025) . To the extent Bromwich has taken the position that all his interview memoranda constitute virtually inviolable opinion work product, this position is without legal support. *See Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1308 (D.C. Cir. 1997) (finding that appellee's argument that a lawyer's interview notes are *always* opinion work product "goes too far"); *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. at 10-12 (rejecting Steptoe's overbroad position that all attorney memoranda of a witness's oral statements are opinion work product).

Courts have found numerous circumstances where an attorney's interview notes do not constitute opinion work product, including notes that do not reveal unanticipated areas of interests, primarily reflect a witness's statement, or do not reflect sharply focused questioning. *See Boehringer Ingelheim Pharms., Inc.*, 778 F.3d at 152 (finding that the documents that show the general counsel's interest in the financials of the deal were not opinion work product because the areas of interest would have occurred to "any competent negotiator" and did not present a "real, nonspeculative danger of revealing the lawyer's thoughts when the thought are already well-known.") (citation omitted); *In re Vitamins Antitrust Litig.*, 211 F.R.D. at 2, 5 (finding no clear error where the Special Master came to a preliminary determination that the attorney notes made in an attempt to record questions and responses accurately, were likely "largely, if not wholly, fact work product."); *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. at 11 (noting that

16

"[w]here the context suggests that the lawyer has not sharply focused or weeded the materials, the ordinary Rule 26(b)(3) standard should apply.") Without having seen the responsive interview memoranda, Plaintiff cannot definitively say in which categories Bromwich's notes fall. However, given the context of Bromwich's fact-finding mission and the resulting report, it is likely that the notes do not reveal unanticipated areas of interest and reflect verbatim statements from the witnesses.

Bromwich was given a clear fact-finding mandate: determine how the GTTF scandal arose. It is hardly a secret that the witness interviews would thus be comprised of questions about the witness's awareness of or suspicions about police misconduct, instances in which BPD officers members committed acts of misconduct, who knew about the misconduct, and what, if anything was done, in response. The quotations reflected in the report reflect Bromwich's predictable line of questioning. *See e.g.* Ex. F at 135 (quoting Burns' personal knowledge about Internal Affairs' failure to investigate BPD Officer Redd's close association with known criminals and Burns' contribution to the FBI's investigation into Redd); 204, n. 49 (citing Burns's reaction to being about Herl's misconduct); 341 (citing Burns' recounting of attempts to have Hersl transferred after multiple internal affairs complaints and failed interventions); 342 (quoting Burns' conversation with Hersl about Hersl's knowledge about corruption within the GTTF); 358 (referencing Burns' lack of surprise that BPD Officers Rayam and Gondo were accused of engaging in misconduct and Burns' lack of trust in them); 385 (Burns disclosing his belief that BPD Officer Gladstone was a "dirty cop"). Choosing these avenues of investigation did not require legal expertise and thus should not be given heightened protection. *See Boehringer Ingelheim Pharms., Inc.,* 778 F.3d at 153 ("Where an attorney's mental impressions are those that a layman would have as well as a lawyer in these particular circumstances, and in

17

no way reveal anything worthy of the description legal theory those impressions are not opinion work product.") (citation omitted).

It also bears repeating that because Bromwich's investigation was not conducted in preparation for any litigation and Bromwich was not tasked with addressing any legal theories, there is no basis for concern that disclosure about which questions Bromwich asked and what information Bromwich chose to document in his notes would reveal any attorney thoughts that would be entitled to remain secret. *See In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d at 1016 ("Some materials do not merit heightened protection because, despite the revelations they contain as to an attorney's thought processes, the lawyer has had no justifiable expectation that the mental impressions revealed by the materials will remain private.").

### ii.   Plaintiff has Substantial Need for the Fact Work Product.

Where the interview memoranda contain fact work product, those portions of the interview memoranda should be disclosed because Plaintiff has substantial need for the information. Plaintiff's request for interview memoranda is very narrow: it is only restricted to memoranda that related to Plaintiff and the Officer Defendants (Hersl, Burns, Romeo, and Moore). *See* Ex. G at Request No. 7. As an initial matter, Hersl is dead and thus cannot be deposed. *Paylor v. Baltimore Police Dept. et al.,* No. 24-cv-02746 (D.Md), ECF No. 63 at ¶ 1. Interview memoranda that contain statements that are attributable to Hersl or reveal Hersl's involvement and/or knowledge of his and other officers' involvement in stealing from citizens, falsely arresting citizens, and/or engaging in criminal activity and then using police powers to cover up the misconduct, the notes are not only relevant but also contain information that Plaintiff will not be able to find without undue hardship.

Similar reasoning applies to interview memoranda related to the living Officer Defendants. First, the substance of Bromwich's interviews goes to the heart of Plaintiff's case.

Here, Plaintiff has claimed that the Officer Defendants stole his money and framed him as a way for covering up their own corruption. Interview memoranda are likely focused on this very type of corruption as this was a modus operandi for GTTF officers. They also likely give clues to the existence or location of other relevant facts such as other witnesses who experienced or knew of the Officer Defendants misdeeds. The memoranda may also give insight into the Officer Defendants' knowledge of one another's misdeeds or provide circumstantial evidence that the Officer Defendants did target Plaintiff and conspired to frame him.

Second, interview memoranda memorializing interviews with Officer Defendants take on heightened significance. At the time the interviews were conducted, these officers were not being sued and were likely candid and forthcoming when speaking to Bromwich. Now, in the context of this litigation, the Officer Defendants are likely to deny any knowledge of misconduct or may now claim a lack of memory. The interviews were also conducted closer in time to the events at issue. The interview memoranda not only serve as tool to refresh the memories of the Officers Defendants but can also be used to impeach them.

Both these reasons establish substantial need sufficient to overcome Bromwich's work product assertion. *See Hickman*, 329 U.S. at 511 (acknowledging that disclosure may be warranted when production of the facts are "essential to the preparation of one's case" and the documents can serve as "admissible evidence or give clues to the existence or location of relevant facts," might be useful for "purposes of impeachment or corroboration," or may be needed because the witnesses is unavailable); *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. at 13-14 (finding that the interview memoranda should be disclosed because it concerned a topic that went to the "heart of the plaintiffs' case" and shed light on a material witness's knowledge of conduct that established liability); *In re Vitamins Antitrust Litig.*, 211 F.R.D. 1, 5–7 (finding

19

substantial need where, *inter alia*, the underlying memoranda could help the attorneys to independently assess about the accuracy of witnesses' deposition testimony); *United States ex rel. Landis v. Tailwind Sports Corp.*, 303 F.R.D. 419, 426 (D.D.C. 2014) (finding substantial need for the law enforcement interview memoranda as the documents likely contain critical evidence for both sides including identifying principal witnesses, and they served as "unique sources of both affirmative evidence and impeachment material for which there is no substitute").

The Court should conduct an *in camera* inspection of the interview memoranda to identify fact work product and order Bromwich to produce a redacted version of the interview memoranda.

## II.    Plaintiff's Narrow Subpoena Request is Not Unduly Burdensome

Bromwich has also objected to Plaintiff's subpoena on the basis of undue burden. Bromwich asserts that it is unduly burdensome to search for and produce responsive documents. Ex. H at 2 (Email between Filler and Benitez, Nov. 10, 2025). However, Bromwich's factually unsupported and generalized objection does not comply with the law and should be rejected. Additionally, Bromwich cannot show that the burden of compliance justifies nonproduction.

A third-party may be excused from complying with a subpoena if compliance will impose an undue burden on the subpoenaed party. *U.S. Commodity Futures Trading Comm'n v. Whitney*, 441 F. Supp. 2d 61, 69 (D.D.C. 2006). It is expected that some burden will be put upon the subpoenaed party, but to resist complying with the subpoena, the subpoenaed party must show that the burden is unreasonable. *See F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977); *BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). Generalized assertions of burden do not suffice. Rather the objection must be supported "by a specific,

detailed showing, usually by affidavit" showing why the burden outweighs the need for discovery. *Klayman v. Jud. Watch, Inc.*, No. CV 06-670 (CKK), 2008 WL 11394172, at *3 (D.D.C. Apr. 2, 2008).

To asses burden the court should consider: whether the requested discovery is relevant, unreasonably cumulative or duplicative, obtainable from some other source that is more convenient, less burdensome or less expensive, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, the importance of the proposed discovery in resolving the issues, the needs of the case, and whether the burden or expense of proposed discovery outweighs its likely benefit. *See Watts v. S.E.C.*, 482 F.3d 501, 509 (D.C. Cir. 2007); Fed. R. Civ. P. 26(b)(1)-(2). "Undue burden occurs when the subpoena is so broad that compliance will severely disrupt its normal business operations." *Id.*

The balance of the factors weighs in Plaintiff's favor. Plaintiff has significantly narrowed his subpoena request to focus only on documents, memoranda, and recordings related to Plaintiff and the four Officer Defendants. The responsive documents are clearly relevant to Plaintiff's case. Given the focus of Bromwich's investigation, the documents in Bromwich's possession about the Officer Defendants will relate to their knowledge of and participation in unconstitutional conduct. To the extent Bromwich has documents related to Plaintiff, these documents would likely support the theory that Officer Defendants' targeted him. In addition to supporting Plaintiff's allegation about Defendants Officers' misdeeds, the documents can also support Plaintiff's claims for compensatory and punitive damages, which are expected to total multiple millions of dollars. *See U.S. Commodity Futures Trading Comm'n v. Whitney*, 441 F. Supp. 2d 61, 69 (D.D.C. 2006) (finding that the subpoena was not unduly burdensome when the

request was narrowed and limited to documents that went to required elements of the government's case).

Further, Bromwich has the resources to search for and identify responsive documents without severely disrupting normal business operations. There is no reason to believe that documents need to be manually searched for and the comprehensive citations in Bromwich's report and the appendices indicate that Bromwich's source documents have been organized in a manner that makes responsive documents easily identifiable.[2] *See In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 127 (D.D.C. 2013) (no undue burden when there was no evidence that the requests were onerous, the burden did not outweigh the likely benefit, and the requested discovery was not unreasonably cumulative or duplicative). To the extent Bromwich's has documents that are publicly available, were provided by BPD, or are already in Plaintiff's possession, Plaintiff does not seek their reproduction.

Finally, to the extent Bromwich believes responsive documents can be produced by other parties, Bromwich needs to first disclose which documents he has and confer with Plaintiff about whether this assertion is accurate and reasonable. As such, to this point, this Court should order Bromwich to search to determine if he has responsive documents and to confer with Plaintiff about the search results. Otherwise, Bromwich should immediately produce responsive documents.

## CONCLUSION

The law is clear. Work product protections do not attach simply because an attorney creates documents or leads a project. Bromwich's interview memoranda were not created within

---

[2] During conferrals, Bromwich's counsel stated that the documents received from BPD were saved on a now corrupted hard drive. Ex. H at 4 (Email between Filler and Benitez, Oct. 31, 2025). Plaintiff is not seeking the reproduction of those documents but does request a log of the documents, to the extent one already exists.

22

the requisite work product conditions, nor were they treated in manner consistent with maintaining work product protections. Thus, the work product doctrine cannot shield the memoranda from disclosure. And even if the doctrine did apply, Plaintiff should be able to obtain the memoranda due to his substantial need. Similarly, Bromwich has failed to make the necessary showing of undue burden to avoid compliance with Plaintiff's subpoena. Plaintiff's motion to compel should be granted.

RESPECTFULLY SUBMITTED, /s/

*One of Plaintiff's Attorneys*

LOEVY & LOEVY
Maggie Filler
311 N. Aberdeen St.
Third Floor
Chicago, IL 60607
(312) 243-5900 (312)
243-5902 (fax)
maggie@loevy.com

## CERTIFICATE OF SERVICE

I, Maggie Filler, an attorney, hereby certify that I filed the foregoing document with the clerk for the United States District Court for the District of Columbia and have served a copy of this motion on Michael Browmich and his counsel Brigida Benitez via U.S. Mail at the following address:

Steptoe & Johnson, LLP,

1330 Connecticut Avenue NW, Ste 700

Washington, DC 20036.

*One of Plaintiff's Attorneys*

23