**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KEYON PAYLOR,<br><br>Petitioner,<br><br>v.<br><br>MICHAEL BROMWICH,<br><br>Defendant. | Case No. 26-mc-87 (JMC) |

# MEMORANDUM OPINION AND ORDER

In September 2024, Petitioner Keyon Paylor sued the Baltimore Police Department (BPD), along with named and unnamed Baltimore Police officers, in the United States District Court for the District of Maryland for alleged misconduct resulting in his conviction. As part of discovery efforts in that case, Paylor subpoenaed Respondent Michael Bromwich, Senior Counsel at Steptoe LLP. The BPD had retained Bromwich, in connection with an active consent decree, to conduct an investigation into widespread corruption and misconduct at the BPD. Paylor requested that Bromwich produce documents related to that investigation. Bromwich refused, citing work-product privilege. Paylor filed in this Court a motion to compel Bromwich's compliance with the subpoena. Paylor argues that the responsive records are not protected by the work-product privilege. He further contends that, even if the privilege applies, he has made a sufficient showing to justify production of portions of the records that he asserts constitute fact work product.

The Court concludes that the documents sought are protected by the work-product privilege. While the Court is persuaded that the notes and memoranda at issue could contain segregable material constituting fact work product, Paylor has not met his burden of demonstrating

substantial need and undue hardship. Accordingly, the Court will **DENY** Paylor's motion to compel.[1]

## I. BACKGROUND

In 2014, Keyon Paylor was arrested outside of his home by BPD Officers Daniel Hersl, Timothy Romeo, John Burns, and Jordan Moore, as well as other unknown Baltimore Police officers. ECF 2-1 ¶¶ 13, 15–24. Paylor was charged with unlawful possession of a firearm. *Id.* ¶ 27. Paylor repeatedly maintained that the police officers involved in his arrest had lied about his possession of a gun and had stolen money from him. *Id.* ¶¶ 28–30. But he did not think that a jury would credit his word over that of the officers. *See id.* ¶ 31; ECF 1 at 3. So, in 2015, Paylor pled guilty to unlawful possession of a firearm and was sentenced to five years in prison. ECF 2-1 ¶¶ 1, 33.

Following his conviction, Paylor learned that the federal government was investigating Officer Hersl and other BPD officers who were involved in the Department's Gun Trace Task Force (GTTF). *See* ECF 2-1 ¶¶ 34–36. In 2017, the BPD entered into a consent decree with the City of Baltimore following the issuance of a report by the U.S. Department of Justice finding "reasonable cause to believe that [the] BPD [was engaging] in a pattern or practice of conduct that violate[d] the Constitution and federal law." ECF 2-2 ¶¶ 1, 4, 9; *see also* ECF 1 at 4. That consent decree, overseen by the District Court for the District of Maryland, remains active today. ECF 6 at 6; *see* ECF 2-2. In 2018, Officer Hersl was convicted at trial of RICO conspiracy and robbery charges related to his conduct as part of the GTTF. ECF 2-1 ¶¶ 40–41. At trial, "the federal government demonstrated that certain BPD officers, including . . . Hersl, had a practice of stealing

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion by, for example, altering capitalization or omitting internal quotation marks, emphases, citations, and alterations. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

money, property and drugs by unlawfully detaining and/or arresting victims, entering their homes, and then authoring false documents . . . to cover up their misconduct." *Id.* ¶ 40.

In 2019, after repeated encouragement by Judge Bredar of the District Court for the District of Maryland, who presided over the consent decree litigation, *see* ECF 2-4 at 7, the BPD engaged Steptoe LLP (then known as "Steptoe & Johnson LLP") to "conduct an independent investigation of the origins, causes, and evolution of the [GTTF], and of the criminal conduct in which its members engaged," ECF 10-1 at 1. This investigation was led by Attorney Michael Bromwich. ECF 1 at 2. In the course of the investigation, Steptoe attorneys "conducted hundreds of interviews." ECF 6 at 7. The investigation culminated in a 515-page report that was submitted to the Maryland district court and released to the public. *See id.* at 6–7; ECF 1 at 5.

In March 2024, Paylor's conviction was vacated and the charges against him were dismissed. ECF 2-1 ¶ 8. Paylor subsequently sued the BPD and Officers Hersl, Romeo, Burns, and Moore—as well as other unnamed officers—alleging, among other things, malicious prosecution, unlawful detention, and violations of Paylor's due process rights. *See generally* ECF 2-1. Paylor subpoenaed Bromwich "seeking documents, memoranda, and recordings relating to the GTTF investigation and the criminal prosecutions of certain GTTF officers." ECF 1 at 6; *see* ECF 2-7. Paylor subsequently narrowed his request to "documents, memoranda, and recordings relating to [Paylor], and [Officers] Hersl, Burns, Romeo, and Moore." ECF 1 at 6. Bromwich objected to the production of responsive documents, citing the work-product privilege. *Id.*; *see also* ECF 2-8 at 2. Paylor then filed in this Court a motion to compel compliance with the subpoena. *See generally* ECF 1. Bromwich asserts that the "only responsive materials uniquely in [his] possession are internal attorney interview notes and memoranda" created during the GTTF investigation—specifically, "interview notes and memoranda created in connection with interviews of Officer

Burns and . . . interview memoranda and notes from other internal interviews that mention Officer Hersl in passing." ECF 6 at 7. Paylor contends that this material should be produced. *See* ECF 1; ECF 10.

## II. LEGAL STANDARD

In general, "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This includes discovery sought from third parties. *See* Fed. R. Civ. P. 45. Under Federal Rule of Civil Procedure 45, a third party commanded by subpoena to produce documents may object in writing to the production of the requested materials. *See* Fed. R. Civ. P. 45(d)(2)(B). If an objection is made, "the serving party may move the court for the district where compliance is required for an order compelling production."[2] Fed. R. Civ. P. 45(d)(2)(B)(i). When privilege is invoked in objecting to production, "the proponent of [the] privilege bears the burden of demonstrating facts sufficient to establish the privilege's applicability." *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750 (D.C. Cir. 2006).

## III. ANALYSIS

### A. The Internal Interview Notes and Memoranda at Issue Constitute Protected Work Product.

As a threshold matter, the Court must determine whether Bromwich has met his burden of demonstrating that the work-product privilege applies to the documents sought. The work-product doctrine "shelters the mental processes of [an] attorney." *United States v. Nobles*, 422 U.S. 225, 238 (1975). The privilege "ensur[es] that lawyers can prepare for litigation without fear that

[2] The subpoena in this case commands that Bromwich produce documents in the District of Columbia. *See* ECF 2-7 at 2. As a result, Paylor's motion to compel is properly brought in this Court. *See In re Boeing Co. Aircraft Sec. Litig.*, 344 F.R.D. 281, 282 (D.D.C. 2023); *Petruss Media Grp., LLC v. Advantage Sales & Mktg., LLC*, No. 22-cv-3287, 2026 WL 846693, at *1 (D.D.C. Mar. 27, 2026).

opponents may obtain their private notes, memoranda, correspondence, and other written materials." *United States v. Williams Cos.*, 562 F.3d 387, 393 (D.C. Cir. 2009). For a document to be protected by the work-product privilege, it must be prepared "in anticipation of litigation." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015); *see also* Fed. R. Civ. P. 26(b)(3)(A). Once attached, the privilege may be waived through disclosure to a third party "if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010).

Here, the Court concludes that Bromwich has satisfied his burden of demonstrating that the interview notes and memoranda sought by Paylor were created "in anticipation of litigation" for purposes of the work-product doctrine because they were prepared in connection with, and because of, ongoing litigation—namely, the active consent decree overseen by the District of Maryland. The Court further concludes that protection of those notes and memoranda was not waived by the publication of a report disclosing information collected during investigation interviews. As a result, the Court finds that the work-product privilege applies.

***1. Bromwich's interview notes and memoranda were created "in anticipation of litigation" for purposes of the work-product doctrine.***

Paylor first contends that the interview notes and memoranda he seeks are not protected by the work-product privilege because they were not created in anticipation of litigation. ECF 1 at 8–13. Paylor argues, in essence, that Bromwich's work was "not conducted in an adversarial context," but was instead motivated by the BPD's desire to "rebuild public trust." *Id.* at 11, 12. Bromwich counters that the documents at issue were created as part of an investigation aimed at assisting the BPD in complying with an active consent decree and, because of their connection to ongoing litigation, should be shielded from production. *See* ECF 6 at 6, 12. Bromwich further argues that "even if there were no ongoing litigation, [his] report was prepared in anticipation of

all-but-certain § 1983 litigation." *Id.* at 12. Both sides make compelling arguments concerning the nature of attorney work generated under unique circumstances. But the Court ultimately concludes that Bromwich has met his burden of demonstrating that the work-product privilege applies.

Courts in this Circuit employ a "because of" test to determine whether a document was created "in anticipation of litigation." *Boehringer Ingelheim*, 778 F.3d at 149. A court must determine "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* For purposes of work-product protection, "litigation" is "interpreted broadly to encompass not only trials and other judicial proceedings, but also adversarial administrative matters, settlement negotiations, and the avoidance of anticipated litigation." *Gen. Elec. Co. v. Johnson*, No. 00-cv-2855, 2006 WL 2616187, at *11 (D.D.C. Sept. 12, 2006).

Importantly, "a document can contain protected work-product material even though it serves multiple purposes." *Deloitte*, 610 F.3d at 138. Being prepared "because of" litigation does not require that litigation be the "primary motivating purpose behind [a] document's creation." *Id.* at 137; *see id.* at 138. Instead, courts in this Circuit ask whether the "document would have been created in substantially similar form regardless of the litigation." *Boehringer Ingelheim*, 778 F.3d at 149. If a document would have been created in substantially similar form absent the litigation, then it is not protected by the work-product privilege. *Id.*

Here, the Court is satisfied that the interview notes and memoranda sought by Paylor were created "in anticipation of litigation" for purposes of the work-product privilege because they were created in connection with—and because of—ongoing litigation. The Court is not persuaded that the general invocation of "all-but-certain § 1983 litigation" is sufficient to demonstrate the applicability of the work-product privilege here. ECF 6 at 12; *see Gen. Elec.*, 2006 WL 2616187,

at *11 ("There must be some specificity to an assertion of work-product protection. It is not enough for the documents to relate to some unspecified claim that may conceivably be brought by some unidentified party at an unknown point in the future."). However, the Court finds that Bromwich's representations regarding the relationship between the GTTF investigation and the active consent decree tip the scales in favor of protection.

Bromwich asserts that that the BPD's engagement of Steptoe "was intended to culminate in the submission of a comprehensive report . . . to the District Court [for the District of Maryland], including . . . recommendations for reform." ECF 6 at 6. This understanding is supported by Steptoe's engagement letter, which provides that work on the investigation would "include the submission of a comprehensive final report"—containing, among other things, "recommendations for changes and reform"—to the Maryland district court in connection with the consent decree. ECF 10-1 at 1. While the consent decree did not require the BPD to retain an attorney to conduct an internal investigation, ECF 10 at 3, the investigation was encouraged by the court overseeing the decree, ECF 2-4 at 7, and Bromwich understood his work to be, "at least in part," aimed at "assist[ing] the BPD in complying with the . . . consent decree," ECF 6 at 6. Bromwich's current representations about the purpose of the investigation are consistent with his testimony at a 2022 hearing in front of Judge Bredar, in which he explained that it was his understanding that Judge Bredar and BPD Commissioners had pushed for an investigation into the GTTF "because they believed that it was necessary in order for the [BPD] to move forward to satisfy the conditions of the consent decree." ECF 2-4 at 25. As Bromwich highlights, while the consent decree remains active, the district court "retain[s] jurisdiction . . . for the purpose of monitoring compliance," ECF 6 at 12; *see also* ECF 2-2 ¶ 493, and the Department of Justice may "seek enforcement" of the consent decree "if it determines that [the] BPD has failed to fully comply," ECF 2-2 ¶ 493. The

Court finds that these facts, taken together, allow it to conclude that the interview memoranda Paylor seeks "can fairly be said to have been prepared . . . because of the prospect of" an enforcement action related to the active consent decree, and that the memoranda would not "have been created in substantially similar form regardless of" the ongoing litigation. *Boehringer Ingelheim*, 778 F.3d at 149.[3] The fact that the investigation also served another purpose—namely, "rebuild[ing] public trust"—does not render the privilege inapplicable. ECF 6 at 16; *see Deloitte*, 610 F.3d at 138.

To be sure, Paylor is correct that "just because the consent decree was active does not [necessarily] mean that Bromwich's role . . . was litigation focused." ECF 1 at 13. Indeed, "not all documents generated from an internal investigation are protected by the work-product doctrine simply because an organization['s] internal investigation coexists with a present or anticipated lawsuit." *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 72 (D.D.C. 2017). But Bromwich's representations—and supporting facts—indicate a causal relationship that exceeds mere coexistence, distinguishing this case from those in which documents have been found to have been created for "internal . . . business purposes," rather than in anticipation of litigation. *See id.* at 71–73 (finding no work-product privilege where multiple years had elapsed between receipt of letter threatening legal action and retention of attorneys to conduct internal investigation, and where "contemporaneous statements . . . regarding the investigation d[id] not indicate that the investigation was conducted as a result of anticipated litigation"); *EEOC v. George Washington*

[3] Though not raised by either Paylor or Bromwich, the Court observes that the consent decree includes a provision stating that "the Parties agree that, as of the effective date of [the consent decree], litigation is not 'reasonably foreseeable' concerning the matters described in [the consent decree]." ECF 2-2 ¶ 503. This provision is seemingly intended to relieve the parties of the obligation to maintain a litigation hold to preserve documents. *Id.* Though the language is similar to that of the test for work-product privilege, the Court finds, in light of its analysis above, that this provision does not bear on whether litigation was fairly foreseeable when Bromwich was subsequently retained to conduct the GTTF investigation. Moreover, the fact that neither Paylor nor Bromwich references this provision in their briefing suggests to the Court that neither party considered it instructive with respect to work-product privilege.

*Univ.*, No. 17-cv-1978, 2021 WL 7907064, at *5 (D.D.C. Sept. 23, 2021) (finding that work-product privilege did not shield documents related to workplace discrimination investigation where university's "internal . . . grievance process provided for . . . investigation of . . . complaint[s] *irrespective* of whether any litigation was forthcoming"). Accordingly, the Court finds that the interview notes and memoranda sought by Paylor were created "because of" litigation for purposes of the work-product privilege; Bromwich has thus sufficiently demonstrated that the privilege applies.

***2. Bromwich has not waived the privilege.***

Paylor next argues that any applicable privilege has been waived by the disclosure of information and quotations from the investigation interviews in a comprehensive public report. *See* ECF 1 at 13–15. Disclosure of work product to a third party "can waive protection if such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Deloitte*, 610 F.3d at 140. However, as Bromwich notes, Paylor's argument "elides the distinction between the [published report] . . . and the underlying information . . . in [Bromwich's] memoranda." ECF 6 at 16. While the GTTF report was made public—and drafts of that report were shared with the City of Baltimore prior to publication—Bromwich's interview notes and memoranda remained internal. *See id.* at 14–15. Bromwich does not contend that the report or any information disclosed in the report is privileged; he argues instead that the information contained in the private notes and memoranda he used to draft the report should be shielded from disclosure. *Id.* at 17. The Court agrees.

As there is no indication that Bromwich's notes and memoranda have been disclosed, the privilege would be waived with respect to those internal documents only if the publication of the report effected an associated waiver of related materials. But courts in this district have found that,

when it comes to work-product doctrine, "a waiver . . . as to particular documents does not [generally] extend to other documents addressing the same subject matter." *Gen. Elec.*, 2006 WL 2616187, at *18; *see also In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (noting that subject-matter waiver of work-product privilege should be found only under limited circumstances); *Williams & Connolly LLP v. SEC*, 729 F. Supp. 2d 202, 211 (D.D.C. 2010) (same). "Subject-matter waiver of the attorney work product privilege should *only* be found when it would be inconsistent with the purposes of the work product privilege to limit the waiver to the actual documents disclosed," *In re United Mine Workers*, 159 F.R.D. at 312 (emphasis added), for example where "a party seeks to use the [work-product] doctrine not as the 'shield' that it was intended to be, but rather as a 'sword' to unfairly influence the outcome of the proceedings," *Gen. Elec.*, 2006 WL 2616187, at *18. Here, there is no indication that Bromwich selectively disclosed information about the interviews "in an attempt to gain a tactical advantage." *In re United Mine Workers*, 159 F.R.D. at 312. To the contrary, as Paylor highlights, the GTTF report is replete with information that is damaging to the BPD. *See* ECF 1 at 10. Accordingly, the Court finds that subject-matter waiver is not appropriate. As a result, privilege has not been waived as to the interview notes and memoranda.

**B. The Notes and Memoranda Sought May Contain Segregable Fact Work Product.**

Having concluded that the work-product privilege applies, the Court must next determine whether the privilege "may be overridden by a showing of substantial need by the requesting party." *FTC v. Match Grp., Inc.*, No. 22-mc-54, 2024 WL 1509180, at *14 (D.D.C. Mar. 12, 2024) (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1302 (D.C. Cir. 1980)). This hinges on whether the notes and memoranda at issue are comprised of "fact" or "opinion" work product. *See id.* Fact work product "is material prepared in anticipation of litigation that does not reveal the

mental impressions, conclusions, opinions, or legal theories of a party's attorney." *Id.* This kind of work product "is discoverable where the party seeking disclosure has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id.*; *see also* Fed. R. Civ. P. 26(b)(3)(A). By contrast, "opinion work product—that is, material that *does* reveal the mental impressions, conclusions, opinions, or legal theories of a party's attorney . . . —is virtually undiscoverable." *Match Grp.*, 2024 WL 1509180, at *14 (emphasis added); *see also Dir., Off. of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997).

As Bromwich acknowledges, ECF 6 at 18, "the proposition that a lawyer's interview notes are always opinion work product . . . goes too far," *In re HealthSouth Corp. Sec. Litig.*, 250 F.R.D. 8, 12 (D.D.C. 2008) (quoting *Off. of Thrift Supervision*, 124 F.3d at 1307–08). "Under certain circumstances[,] purely factual material embedded in attorney notes may not deserve the super-protection afforded to a lawyer's mental impressions." *Off. of Thrift Supervision*, 124 F.3d at 1308. Specifically, "courts in this district have held that substantially verbatim [witness] statements contained in interview memoranda prepared by counsel that have not been 'sharply focused or weeded' by an attorney [are] fact rather than opinion work product." *United States v. Sutton*, No. 21-cv-598, 2022 WL 3340046, at *6 (D.D.C. Aug. 12, 2022); *see also In re HealthSouth Corp*, 250 F.R.D. at 11–12 (explaining that interview memoranda may be fact work product where materials are "not sharply focused," discussion is "wide-ranging," and notes contain "summaries of the interviews that largely take the form of questions asked and answers given").

Paylor has indicated that he would "accept redactions of any mental impressions, conclusions, opinions, or legal theories" from the interview notes and memoranda. ECF 2-8 at 3. The Court agrees that such redactions would be both appropriate and required. *See Off. of Thrift*

*Supervision*, 124 F.3d at 1307; *In re HealthSouth Corp.*, 250 F.R.D. at 11–12 ("If an interview memorandum . . . contains elements of opinion work product, those sections should be redacted before the materials are produced."). The question, then, is whether the documents sought may contain information that does *not* reveal Steptoe attorneys' mental impressions. While the Court credits Bromwich's assertion that the interview notes and memoranda are not simply "verbatim transcripts" of officer interviews, ECF 6 at 19, the Court observes that the direct quotes that appear throughout the GTTF report presumably came from some form of contemporaneous memorialization of the interviews conducted, perhaps including summaries that "take the form of questions asked and answers given," *In re HealthSouth Corp.*, 250 F.R.D. at 12. Moreover, the broad mandate of Bromwich's investigation—including examination of the historical "origin, causes, and evolution" of the GTTF, ECF 10-1 at 1—suggests that the interviews could have involved at least some "wide-ranging discourse," that was not "sharply focused or weeded," *In re HealthSouth Corp*, 250 F.R.D. at 11. As a result, the Court finds that it is conceivable that the notes and memoranda at issue here contain some fact work product. However, the Court concludes that Paylor has not made a sufficient showing to compel production of that work product.

**C. Paylor Has Not Met His Burden of Demonstrating Substantial Need and Undue Hardship.**

A court may order production of fact work product "when the requesting party can show a substantial need for the material and an inability to procure equivalent information without undue hardship." *Deloitte*, 610 F.3d at 135; *see also* Fed. R. Civ. P. 26(b)(3)(A). However, Paylor has not made that showing here.

A party requesting production of fact work product can generally meet its burden "if it demonstrates that the materials are relevant to the case, the materials have a unique value apart from those already in the movant's possession, and 'special circumstances' excuse the movant's

failure to obtain the requested materials itself." *Boehringer Ingelheim*, 778 F.3d at 155. The D.C. Circuit has recognized that, in the context of witness statements, "special circumstances" are present where, for example, a witness is "unavailable, reluctant, or hostile, or if the witness had a lapse of memory or deviated from prior statements." *Id.* at 155–56 (citing approvingly *S. Ry. Co. v. Lanham*, 403 F.2d 119, 128–31 (5th Cir. 1968)). By contrast, "special circumstances" are not present where, for example, a party possesses substantially similar information or its purported need for the requested information is speculative. *See id.* at 155 (collecting cases).

Paylor contends that he has substantial need for the interview memoranda—and would be unable to obtain equivalent information without undue hardship—for a few reasons. First, Paylor notes that Officer Hersl has died "and thus cannot be deposed." ECF 1 at 18. Paylor asserts that notes and memoranda "that contain statements that are attributable to Hersl or reveal Hersl's involvement" in misconduct are therefore relevant and "contain information that [Paylor] will not be able to find without undue hardship." *Id.* Second, Paylor contends that interview memoranda related to Officers Burns, Romeo, and Moore "take on heightened significance" because "at the time the interviews were conducted, [those] officers were not being sued and were likely candid and forthcoming." *Id.* at 19. Now, Paylor asserts, "in the context of this litigation, [they] are likely to deny any knowledge of misconduct or may . . . claim a lack of memory." *Id.*

Bromwich responds that Steptoe does not "possess documents concerning Officers . . . Romeo and Moore aside from occasional . . . references in agency documents." ECF 6 at 9. He further asserts that "the only responsive materials uniquely in [his] possession are internal attorney interview notes and memoranda created in connection with interviews of Officer Burns[,] and internal attorney interview memoranda and notes from other internal interviews that mention Officer Hersl in passing." *Id.* at 7. According to Bromwich, all information "sought about Officers

Hersl and Burns is duplicative of and available in the publicly released report." *Id.* at 21. Bromwich contends that Paylor "seeks only to confirm from Steptoe attorneys what [he] knows about [the] officers already from other sources." *Id.* at 10.

Assuming, *arguendo*, that the subpoenaed documents contain information that is not otherwise public or discoverable, Paylor's claim of substantial need and undue hardship fails because Paylor has not indicated that he has made any effort to obtain equivalent information by other means. As a result, he cannot demonstrate that "'special circumstances' excuse [his] failure to obtain the requested materials [himself]." *Boehringer Ingelheim*, 778 F.3d at 155. While Paylor asserts that Officers Burns, Romeo, and Moore may "deny any knowledge of misconduct" or "claim a lack of memory" if interviewed, Paylor does not indicate that he has made any attempt to depose them. ECF 1 at 19. At this point, any claim of reluctance, hostility, or lack of memory is purely speculative. *See Boehringer Ingelheim*, 778 F.3d at 155; *cf. Match Grp.*, 2024 WL 1509180, at *23–24 (finding substantial need and undue hardship where Federal Trade Commission sought privileged communications from witnesses after conducting investigative hearings in which witnesses were "unable to answer questions" or "unable to recall" relevant information). While the Court recognizes that Officer Hersl cannot be deposed, neither party has indicated that he was interviewed in the course of the GTTF investigation. Rather, Bromwich asserts that Hersl was mentioned, in passing, in the interviews of *other* officers. *See* ECF 6 at 7. Paylor does not assert that he has made any effort to depose—or even identify—those officers, leaving without support his claim that he will face undue hardship in attempting to obtain the information he seeks related

to Hersl. Because Paylor has failed at this time to meet his burden of demonstrating substantial need and undue hardship, the Court will deny his motion to compel.[4]

* * *

For the foregoing reasons, Paylor's motion to compel compliance with the third-party subpoena, ECF 1, is **DENIED**.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: November 12, 2026

[4] Bromwich also objects to production of the requested notes and memoranda on the grounds that Paylor's request is unduly burdensome. ECF 6 at 20–22. Because the Court concludes that compliance with the subpoena should not be compelled, the Court does not reach this issue.